IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 34497-5-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RODNEY LEWIS HARLAN, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

FEARING, C.J. — Despite Rodney Harlan engaging in an extensive crime spree, the State charged Harlan with only three crimes: residential burglary, possession of a stolen motor vehicle, and possession of stolen property in the third degree. Harlan appeals his convictions for all three crimes on the ground of insufficient evidence. He also contends the trial court committed error when permitting the State to introduce evidence of other crimes during his spree and when refusing to bifurcate, into a separate trial, the possession of stolen property charge. We reject Harlan's contentions and affirm the three convictions.

FACTS

The evidence presented by the State of Washington at trial showed Rodney Harlan to have engaged in a crime binge in late December 2015. On the night of December 19, 2015, Kenneth Anderson parked his red Nissan Pathfinder sports utility vehicle (SUV) on the left-hand side of his driveway at his home at 5502 Bristol Way, Yakima. The garage attached to Anderson's residence. When Anderson awoke the following morning, the Pathfinder was missing. Anderson did not grant anyone permission to drive the car. Anderson entered his garage and also noticed the vanishment of a drill press, jumper cables, and small letter dash tools. Anderson kept his garage door opener on the sun visor of the Pathfinder.

On December 20, 2015, Kenneth Anderson reported the missing red Pathfinder and tools to the Yakima Police Department. A few weeks later, police found the Pathfinder on 47th Avenue, one mile from Kenneth Anderson's home. Police notified Anderson of the location of his missing car, and Anderson traveled the short distance to the locale and identified his missing vehicle parked in a carport behind a house. He noticed the fuel door to the vehicle open and the gas cap missing. When Anderson inserted his key into the ignition switch and turned the key, the engine started and the gas gauge registered an empty fuel tank.

On December 21, 2015, Trent Price observed suspicious activity on Hamilton Street, a block away from his residence at 2511 West Viola Avenue, Yakima. When

2

driving home from his girlfriend's house at 3:30 a.m., Price espied a gentleman confiscating objects from an unlighted garage and placing the property inside an older red SUV with a spare tire on the back. His observations impressed Price because the red SUV appeared ill fitting for the neighborhood, the house next to the garage lacked any lit lighting, and the gentleman was seizing goods from a dim garage late at night. Price drove by the residence and its driveway at fifteen to twenty miles per hour. Despite the lack of lighting, Price saw the gentleman sufficiently to later supply police with a description of the man. Trent Price notified police of the suspicious activity on Hamilton Street. A week or two later, Price identified, in a photo line-up, the man to be Rodney Harlan.

Crescencio Montes de Oca Torres lived at the 1304 Hamilton Avenue residence where Trent Price viewed suspicious activity. Torres' residence incorporated an attached garage. Torres owned two vehicles, including a Toyota Tacoma truck. Torres habitually parked the pickup truck in front of his house by the garage. To open his garage from the truck, Torres used a garage door opener. The record lacks testimony of whether anyone stole property from Torres' garage or residence.

On December 23, 2015, Andrew Eakin reported his Toyota Tacoma truck stolen from his driveway at 5408 Webster Avenue, Yakima. Eakin did not extend anyone permission to drive the truck. He testified that he normally parked his truck in the garage, but because of a recent snow accumulation, he parked the Toyota in the driveway

3

before it went missing. Eakin stored a garage door opener in his truck. Accordingly, when he noticed the truck missing, Eakin proceeded to his garage to investigate whether any items were missing. Eakin discovered items missing from his garage and house. There were no visible signs of forced entry into the garage. A day or two later, someone abandoned Eakin's truck at a residence near Franklin Park and Memorial Hospital in Yakima. The home owner retrieved Eakin's information inside the unlocked truck and called him. Eakin identified the abandoned truck as his and used his spare key to drive the Tacoma home.

On December 28, 2015, an unidentified homeowner noticed a burglar prowling his residence on 56th Avenue, in Yakima. The homeowner captured the prowler's vehicle on a surveillance system camera. The car was a distinctive maroon SUV with a sunroof and big wheel attached to the rear door. The photograph, taken from above the car, showed snow covering the top of the car's hood.

The unidentified homeowner on 56th Avenue reported the burglary to Yakima Police Officer Erin Levy. Officer Levy viewed the surveillance picture of the SUV. Yakima Detective Ryan Yates showed the photograph to Kenneth Anderson, who identified the maroon SUV as his red Nissan Pathfinder.

While on patrol on December 29, 2015, Officer Erin Levy saw a maroon SUV that turned northbound from Yakima's Tieton Street onto 47th Avenue. The vehicle matched the description of the vehicle involved in the burglary the day before and identified by

4

Kenneth Anderson as his Pathfinder. Officer Levy saw a gentleman, wearing a dark hoodie, driving the car. Levy followed the driver northbound on 47th Avenue. Then Levy observed the car driving down a long driveway and stopping in a carport at 401 South 47th Avenue. Officer Levy continued past the driveway and executed a U-turn. As she drove in front of the driveway again, Levy saw the SUV parked in the carport and an individual in a dark hoodie standing outside the driver's side door.

Yakima Officer Erin Levy called dispatch for assistance. Police Officer Chad Irwin responded. Levy and Irwin walked down the driveway to the carport. The duo compared the parked vehicle to the picture of the SUV photographed by the surveillance camera the day before. Levy and Irwin agreed the car in the carport matched the photographed car. Even the snow on the top of the SUV remained. Levy noticed the hood to the SUV propped up and a gas can next to the gas tank. She also observed a Volkswagen Bug parked next to the SUV.

Officer Erin Levy walked toward the residence to knock on its front door. As she did so, she and Officer Chad Irwin discovered Rodney Harlan crouched by the wheel well of the Volkswagen Bug. Harlan startled the officers. He wore a dark hoodie jacket. Harlan told the officers he was looking for his friend, David Nediffer.

Tawnya Engle, her husband, and their two children lived at 401 South 47th Avenue, on December 29, 2015. The family had left Yakima on vacation. The Engles left their Volkswagen Bug parked in the carport.

5

On December 29, while still at 401 South 47th Avenue, Yakima Officer Erin Levy contacted dispatch and learned that the Department of Corrections had issued a warrant for the arrest of Rodney Harlan. Levy arrested Harlan, after which she searched Harlan's person. She discovered a Toyota key on a red key chain and another set of unidentifiable keys. The keychain contained a Toyota care multicolored plastic tag, with the truck's vehicle identification number thereon, and a red bottle opener from Tide Insider Works. Levy read Harlan his Miranda rights in the patrol car. Levy asked Harlan whether he wished to speak to police detectives. Harlan declined because "he had nothing to do with the stolen car or the burglary." Report of Proceedings (RP) at 57. At the police station, Levy handed the keys she found on Harlan's person to Detective Ryan Yates.

Detective Ryan Yates contacted Andrew Eakin and showed Eakin the recovered set of car keys and the keychain. Eakin recognized the keys as keys to his Toyota truck and the keychain as his keychain. The key unlocked Eakin's Toyota.

When the Engle family returned to their Yakima home on an unidentified date, Tawnya Engle noticed three gas cans in the carport. On the next day, Engle's husband worked on the Volkswagen Bug and found a set of filed keys and gloves under the car's fender well. The Engles did not know Rodney Harlan and did not give him permission to be on their property. No one named Nediffer lived at the Engle residence.

6

PROCEDURE

The State of Washington charged Rodney Harlan with residential burglary, possession of a stolen motor vehicle, and third-degree possession of stolen property. The State alleged Harlan committed residential burglary on December 21, 2015, by burgling the residential garage of Crescencio Montes de Oca Torres at 1304 Hamilton Avenue. The alleged stolen motor vehicle was Kenneth Anderson's red Nissan Pathfinder SUV. The State premised the possession of stolen property charge on Harlan's possession of Andrew Eakin's Toyota Tacoma keys. The State did not charge Harlan with the reported burglaries on December 19, December 23, and December 28, 2015.

Before trial, Rodney Harlan filed a motion to bifurcate, for trial purposes, the possession of stolen property count from the other two charges. Harlan argued for bifurcation because the State could not show that his possession of the stolen Toyota keys related to the same scheme or plan involving burglary of Crescencio Montes de Oca Torres' garage and the theft of the Nissan Pathfinder SUV. The State answered that Rodney Harlan engaged in an ongoing scheme that involved burglaries on December 19, December 21, December 23, December 28, and December 29, 2015, although the State had not charged crimes occurring on all five days.

Before trial, the State filed a motion in limine to admit evidence, under ER 404(b), of uncharged burglaries. The arguments in favor and in opposition to the State's motion

7

in limine overlapped the arguments respectively forwarded by both sides in support of and in opposition to Rodney Harlan's motion for bifurcation.

The trial court conducted a hearing on the pretrial motions. The trial court granted the State's motion to present evidence of the uncharged burglaries. At the beginning of its oral ruling, the trial court confirmed that a preponderance of the evidence is the State's burden of proving the truth of the other crimes, and the court later commented that the State met this burden of proof. The court acknowledged difficulty in determining whether to admit evidence of the uncharged burglaries. In its ruling, the trial court emphasized that the charged and uncharged crimes occurred within a small geographic area and entailed the use of a remote-control opener, extricated from a car parked in a driveway, as the mechanism of entry into a garage or home. The trial court also determined that admission of the evidence was not unduly prejudicial because evidence from one crime implicated Harlan in that crime and in the other uncharged crimes, so most of the evidence would be admitted anyway.

The court denied Rodney Harlan's motion to bifurcate count 3, the possession of stolen property charge. The court's grant of the State's motion guided its decision to deny the motion to bifurcate. The trial court found the relevance of the evidence from the uncharged crimes to the charged crimes outweighed any prejudice to Harlan. Thus, one trial for all three charges would not disproportionately prejudice Harlan.

8

The trial court instructed the jury that, to convict Rodney Harlan of residential burglary, the jury must find that Harlan entered or remained unlawfully in a dwelling with intent to commit a crime against a person or property therein. A separate instruction defined dwelling as any building or structure that is used or ordinarily used by a person for lodging, including an attached garage. The trial court instructed the jury that, to convict Rodney Harlan of the crime of unlawful possession of a motor vehicle, the jury must find: (1) that on or about December 29, 2015, Harlan knowingly received or retained, or possessed, or concealed, or disposed of a stolen motor vehicle, (2) Harlan acted with knowledge that the motor vehicle had been stolen, (3) Harlan withheld or appropriated the motor vehicle to the use of someone other than the true owner or person entitled thereto, and (4) that any of these acts occurred in the State of Washington. Another jury instruction defined "stolen" as obtained by theft.

A jury convicted Rodney Harlan on all three charges. The trial court sentenced him to eighty-four months' confinement on Count 1, fifty-seven months' confinement on Count 2, and three-hundred sixty-four days' confinement, with one hundred eighty-four days suspended, on Count 3. The court assessed $2,605.00 in restitution, costs, assessments and fees.

## LAW AND ANALYSIS

*Issue 1: Whether the trial court erred, under ER 404(b), when granting the State's motion to admit evidence of contemporaneous uncharged burglaries?*

9

*Answer 1: No.*

On appeal, Rodney Harlan first contends that the trial court erred, under ER 404(b), when admitting evidence of uncharged burglaries occurring on December 19, December 23, and December 28, 2015. We do not know why the State did not bring the additional charges. The State's prosecuting attorney holds discretion in charging decisions, and we compliment the State for exercising discretion leniently in favor of Rodney Harlan. In response to Harlan's appellate argument, the State advocates the admissibility of the evidence to present a complete narrative surrounding the crimes charged and to establish a scheme or plan, of which the crimes charged were a part. We agree with the State.

Washington's familiar ER 404(b) reads, in relevant part:

> Other Crimes, Wrongs, or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

(Boldface omitted). Evidence of prior bad acts is presumed inadmissible, and any doubts as to admissibility are resolved in favor of exclusion. *State v. DeVincentis*, 150 Wn.2d 11, 17, 74 P.3d 119 (2003); *State v. Vy Thang*, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002). Nevertheless, when demonstrated, such evidence may be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *State v. Powell*, 126 Wn.2d 244, 258, 893 P.2d 615

10

(1995). This court reviews the trial court's decision to admit evidence for abuse of discretion. *State v. DeVincentis*, 150 Wn.2d at 17.

When addressing ER 404(b) evidence, the trial court must engage in four steps. Before admitting evidence of prior bad acts, the trial court must on the record: (1) determine that the acts occurred by a preponderance of the evidence, (2) identify the purpose for which the evidence is sought to be introduced, (3) determine whether the evidence is relevant to prove an element of the crime charged, and (4) weigh the probative value of the evidence against its prejudicial effect. *State v. Lough*, 125 Wn.2d 847, 853, 889 P.2d 487 (1995). The Washington Supreme Court explained the policy behind the four factors when it wrote:

> We cannot overemphasize the importance of making such a record. Here, as in cases arising under ER 609, the absence of a record precludes effective appellate review. *See State v. Jones*, 101 Wn.2d 113, 677 P.2d 131 (1984). Moreover, a judge who carefully records his reasons for admitting evidence of prior crimes is less likely to err, because the process of weighing the evidence and stating specific reasons for a decision insures a thoughtful consideration of the issue.

*State v. Jackson*, 102 Wn.2d 689, 694, 689 P.2d 76 (1984).

We now review the trial court's analysis of the four ER 404(b) factors and note that the trial court exemplarily analyzed the four elements. The first factor is whether the trial court determined that the uncharged acts occurred by a preponderance of the evidence. After presentment of an offer of proof, the trial court ruled that the State met this burden.

11

Second, the trial court must identify the purpose for which the evidence is sought to be introduced. Relying on *State v. Tharp*, 96 Wn.2d 591, 637 P.2d 961 (1981), the State urged the trial court to admit the evidence for the purported purpose of establishing a complete description of the crimes charged and proving a scheme or plan of which the crimes charged were a part. In *State v. Tharp*, the State charged Jo Elliott Tharp with second degree felony murder. The day Tharp allegedly committed murder, a series of crimes were committed earlier in the day in widely separated areas of Bellingham. The trial court admitted into evidence all but one of these earlier crimes, which were uncharged as to Tharp. The jury found Tharp guilty and he appealed. This court and the state high court affirmed the trial court's admission of the uncharged crimes under the exception that collateral crimes are admissible for certain limited purposes.

Rodney Harlan's trial court acknowledged that the uncharged burglaries the State sought to introduce as evidence were similar to the collateral crimes admitted in *Tharp*. The court quoted the *Tharp* decision, noting:

> In this instance, the uncharged crimes were an unbroken sequence of incidents tied to Tharp, all of which were necessary to be placed before the jury in order that it have the entire story of what transpired on that particular evening. Each crime was a link in the chain leading up to the murder and the flight therefrom. Each offense was a piece in the mosaic necessarily admitted in order that a complete picture be depicted for the jury.

*State v. Tharp*, 96 Wn.2d at 594 (1981).

12

As did the trial court in *Tharp*, Rodney Harlan's trial court explored the sequence of events in Rodney Harlan's crime spree and evaluated whether individual events, as part of an entire story, would assist the jury in resolving the case. The trial court noted that the discrete crimes occurred during a short window of time, from December 21 through December 29. All incidents occurred in a small area inside Yakima. Harlan employed the same method used to gain access to the victim's homes. He utilized a remote-control opener stolen from a vehicle parked in a driveway.

The trial court further examined the December 19, December 23, and December 28 uncharged burglaries in relation to the charged crimes. On December 19, Rodney Harlan probably stole Kenneth Anderson's red SUV. On December 21, a witness saw Harlan with the red truck when Harlan burglarized Crescencio Montes de Oca Torres' Hamilton Avenue residence. Police Officer Erin Levy saw Harlan later driving the red SUV. On December 23, a similar burglary occurred involving a Toyota Tacoma truck, the keys of which were found on Harlan's person, when Levy arrested Harlan as he crouched near the red SUV.

The third ER 404(b) consideration for the trial court is whether the evidence is relevant to prove an element of the crime charged. Rodney Harlan's trial court evaluated the relevance of the uncharged crimes under the three-step process identified in *State v. Herzog*, 73 Wn. App. 34, 867 P.2d 648 (1994). In *Herzog*, the court found that evidence that the accused committed an uncharged crime can be relevant to the identity of the

13

suspect in as few as one or as many as three ways: (1) general propensity to commit

crime, (2) propensity to commit a specific type of crime, or (3) a three-step process of

logical deduction. The three-step process includes (a) comparison of the facts of the

uncharged crime to the facts of the charged crime, and (b) determination of whether the

accused committed the uncharged crime. The third and final step is the logical deduction

of (a) and (b); "if *the same* person committed the charged and uncharged crimes, and if

the accused committed the uncharged crime, it can be logically deduced, independently

of propensity, that the accused is the person who committed the charged crime." *State v.

Herzog*, 73 Wn. App. at 46. Evidence meeting the three-step process is considered

evidence of "modus operandi" or "identity" under ER 404(b). The trial court found the

*Herzog* three-step process satisfied and thereby found evidence of the uncharged

burglaries relevant to show that Rodney Harlan committed the crimes charged.

Lastly, the trial court needed to weigh the probative value of the evidence against

its prejudicial effect on Rodney Harlan. The court found that Harlan probably committed

the December 19, December 21 and December 23 burglaries, all of which involved

evidence relevant to the charged crimes. According to the trial court, absent such a tie,

the relevance of the evidence might not outweigh the prejudice. Harlan's close

relationship to all crimes rendered the evidence more relevant than prejudicial.

Based on the trial court's extensive ER 404(b) analysis on the record, we hold the

trial court did not abuse its discretion when admitting evidence of uncharged crimes.

14

No. 34497-5-III
*State v. Harlan*

*Issue 2: Whether the trial court erred in failing to bifurcate count 3 from the other two counts for trial purposes?*

*Answer 2: No.*

Rodney Harlan maintains that the trial court should have bifurcated his trial to separate the jury's consideration of the evidence regarding the charge of possession of stolen property from the evidence relating to the charges of burglary and possession of a stolen motor vehicle. We hold that the trial court did not abuse its discretion when denying Harlan's motion to bifurcate. Much of the same reasoning for affirming the admission of evidence of uncharged crimes overlaps with the reasoning behind affirming the denial of the motion to bifurcate for trial.

Bifurcated trials are generally not favored, but may be necessary. *State v. Monschke*, 133 Wn. App. 313, 335, 135 P.3d 966 (2006). Bifurcation is inappropriate if a unitary trial would not significantly prejudice the defendant or if there is a substantial overlap between the evidence relevant to the proposed separate proceedings. *State v. Monschke*, 133 Wn. App. at 335. The appellate court reviews a trial court's decision to deny bifurcation for abuse of discretion. *State v. Roswell*, 165 Wn.2d 186, 192, 196 P.3d 705 (2008); *State v. Monschke*, 133 Wn. App. at 335. A court abuses its discretion only when its decision is manifestly unreasonable or based on tenable grounds. *State v. Monschke*, 133 Wn. App. at 335.

15

When addressing Rodney Harlan's motion to bifurcate, the trial court noted the State's desire to present evidence of uncharged criminal activity. As discussed above, the trial court found the uncharged crimes relevant, admissible, and not unduly prejudicial to Harlan. For the same reasons that the trial court admitted evidence of other wrongdoing, the trial court reasoned that bifurcation was inappropriate and joining the possession of stolen property charge with the other two counts did not unduly prejudice Harlan. The Toyota Tacoma keys were the subject of count three. The trial court noted that the keys found on Harlan's person were related to the uncharged crime from December 23, 2015, when a caller reported the Toyota Tacoma truck as stolen. Accordingly, evidence of the December 23 uncharged burglary related to the State's evidence presented for possession of the stolen keys. Other evidence from the charges for possession of a stolen vehicle and burglary pointed to Harlan and showed a series of events, establishing a modus operandi. Therefore, substantial evidence overlapped between all charges and supported the trial court's denial of Harlan's bifurcation request.

*Issue 3: Whether the State presented sufficient evidence to convict Rodney Harlan of possessing a stolen car.*

*Answer 3: Yes.*

Rodney Harlan claims the State's evidence failed to support the jury's finding that he possessed Kenneth Anderson's stolen red Nissan Pathfinder SUV. To resolve this contention, we review principles of sufficiency of evidence. Evidence is sufficient if,

16

after viewing it in the light most favorable to the State, a rational trier of fact could find each element of the crime beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 221-22, 616 P.2d 628 (1980); *State v. Witherspoon*, 180 Wn.2d 875, 883, 329 P.3d 888 (2014). A defendant challenging sufficiency of the evidence at trial admits the truth of the State's evidence and all reasonable inferences therefrom. *State v. Witherspoon*, 180 Wn.2d at 883. This court defers to the fact finder's credibility determinations and determinations of the persuasiveness of the evidence. *State v. Thomas*, 150 Wn.2d 821, 874, 83 P.3d 970 (2004).

A verdict may be supported by either circumstantial or direct evidence, as both may be equally reliable. *State v. Brooks*, 45 Wn. App. 824, 826, 727 P.2d 988 (1986). A jury may draw inferences from evidence so long as those inferences are rationally related to the proven facts. *State v. Jackson*, 112 Wn.2d 867, 875, 774 P.2d 1211 (1989).

The State needed to prove the following elements to convict Rodney Harlan of the crime of unlawful possession: (1) that on or about December 29, 2015, Harlan knowingly received, retained, possessed, concealed, or disposed of a stolen motor vehicle, (2) Harlan acted with knowledge that the motor vehicle had been stolen, (3) Harlan withheld or appropriated the motor vehicle to the use of someone other than the true owner or person entitled thereto, and (4) one of these acts occurred in the State of Washington. The instructions defined "stolen" to mean obtained by theft. RP at 277. "Theft" means "(a) to wrongfully obtain or exert unauthorized control over the property or services of

17

another or the value thereof, with intent to deprive him or her of such property or services, or (b) by color aid of deception to obtain control over the property of services of another or the value thereof, or (c) to appropriate lost or misdelivered property or services of another, or the value thereof, with intent to deprive him or her of such property or services." RCW 9A.56.020(1).

Sufficient evidence supported the jury's finding that Rodney Harlan stole the red SUV. Kenneth Anderson reported his red Nissan Pathfinder SUV missing to police. Anderson did not grant anyone permission to drive his SUV. The police later showed Anderson a photograph of a red SUV taken from a security camera of a different burglary and Anderson confirmed the vehicle as his. When she patrolled the streets, Police Officer Erin Levy saw a red SUV that matched the SUV in the photograph. Officer Levy followed the vehicle to a driveway off of 47th Avenue. Levy and Police Officer Chad Irwin approached the vehicle parked in the carport and agreed it was the same SUV. The officers discovered Harlan crouched behind a Volkswagen Bug also parked in the carport. The police notified Anderson that they recovered his stolen SUV, and he arrived at the house on 47th Avenue to find his SUV parked in the carport. Anderson identified the vehicle and used his key to start the car.

Rodney Harlan correctly observes that Officer Erin Levy never testified to the jury that the maroon SUV was a Nissan Pathfinder or that the red Nissan Pathfinder was stolen from Kenneth Anderson on Bristol Way on December 19. While such testimony

18

might have assisted the jury, the testimony was not required. The jury was able to consider circumstantial evidence and make inferences rationally related to the proven facts. *State v. Jackson*, 112 Wn.2d at 875 (1989). The facts presented to the jury demonstrated that someone stole Anderson's red SUV on December 19, 2015, someone used Anderson's stolen SUV to commit a burglary on December 28, 2015, Officer Levy identified the red SUV parked in the carport off 47th Avenue as the SUV used in the December 28 burglary, and Anderson identified the SUV parked in the carport as his stolen SUV.

*Issue 4: Whether the State presented sufficient evidence to establish Rodney Harlan possessed stolen keys?*

*Answer 4: Yes.*

Rodney Harlan contends the State's evidence failed to support the jury's finding that the keys the police found on his person were Andrew Eakin's stolen Toyota Tacoma truck keys. We disagree.

Direct and circumstantial evidence establishes that the keys found in the possession of Rodney Harlan were Andrew Eakin's stolen keys. Eakin testified that someone stole his Toyota Tacoma truck on December 23, 2015. He did not grant anyone permission to drive his truck. Eakin recovered his truck after someone abandoned it. He used a spare key to operate the vehicle. Police Officer Erin Levy searched Harlan's person and discovered a Toyota key with a red key chain attached. Officer Levy gave

19

Detective Ryan Yates the keys. Detective Levy contacted Eakin regarding the keys, and Eakin recognized the keys. Eakin testified that his keys were distinct because the keychain contained a Toyota care multicolored plastic tag with the truck's vehicle identification number on it, as well as a red bottle opener from Tide Insider Works. The key unlocked his stolen truck.

Rodney Harlan emphasizes that Officer Erin Levy never identified the Toyota key with a red chain attached thereto that Levy found on Harlan's person as the key stolen from Andrew Eakin on December 23, 2015. Because of the abundance of other evidence, such direct testimony was unneeded.

Issue 5: *Whether the State presented sufficient evidence to establish that the garage Rodney Harlan burglarized was a residential dwelling?*

*Answer 5: Yes, since the garage was attached to Crescencio Montes de Oca Torres' residence.*

Rodney Harlan argues the State failed to present adequate evidence to support a determination that the garage he burglarized was a dwelling for purposes of convicting him of residential burglary. One commits the crime of residential burglary when he or she enters or remains unlawfully in a "dwelling" with intent to commit a crime against a person or property therein. RCW 9A.04.110(7). We have held that, for purposes of residential burglary, a "dwelling" includes an attached garage. *State v. Murbach*, 68 Wn. App. 509, 513, 843 P.2d 551 (1993). Crescencio Montes de Oca Torres' testified that his

20

No. 34497-5-III
*State v. Harlan*

garage was attached to his home.

CONCLUSION

We affirm all trial court rulings challenged on appeal. We affirm all three

convictions of Rodney Harlan.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Fearing, C.J.

WE CONCUR:

_____
Korsmo, J.

_____
Siddoway, J.

21